UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SHELLIE D. REDMON, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 13-cv-1323 (TSC) |
| UNITED STATES CAPITOL POLICE, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM OPINION (REDACTED)

Before the Court is Defendant United States Capitol Police's motion to dismiss Plaintiff Shellie Redmon's Complaint. Redmon alleges a variety of discrimination and other claims based on Defendant denying her requests for a teleworking arrangement. Defendant moves to dismiss the Complaint in its entirety on a number of grounds, including that some of the claims are barred by the doctrine of *res judicata,* and that Redmon has failed to state a claim for which relief can be granted.[1] Upon consideration of the motion, the response and the reply thereto, and for the following reasons, the motion is granted.

### I. BACKGROUND

The Complaint alleges the following facts, which will be assumed to be true for purposes of the motion to dismiss. Plaintiff Redmon is an Intelligence Research Specialist within the Protective Services Bureau ("PSB") of the U.S. Capitol Police ("Capitol Police"). (Compl. ¶ 6). She is an African-American woman and is over the age of 40. (*Id.* at ¶ 4). Redmon suffers from a medical condition called sarcoidosis and has suffered from this condition since before her

---

[1] Plaintiff withdrew any claims predicated on actions taken before January 2013 at oral argument. Defendant's arguments with respect to those claims, including that this Court lacks subject matter jurisdiction, will not be addressed.

employment with the Capitol Police.  (*Id.* at ¶ 8).  Redmon's sarcoidosis causes severe lower leg pain and makes her feet swell.  (*Id.*).  It also affects her eyes, nose, and musculoskeletal system.  (*Id.*).  Redmon's symptoms are not always present—they occur in "flare ups" from time to time.  (*Id.* at ¶ 9).  Because of her condition, Redmon has asked to be allowed to telework on an intermittent basis when she has a flare up.  (*Id.*).  Her requests have consistently been denied.[2] (*Id.* at ¶ 10).  As a result, Redmon has used her sick leave, annual leave, and compensatory time on the days when she cannot come to work because of a sarcoidosis flare up.  (*Id.* at ¶ 25).  She estimates that as of September 25, 2012, she has used 675.5 hours of leave.  (*Id.*).  However, less than 200 hours of this leave time is attributable to the sarcoidosis flare ups.  (*Id.*).

Redmon works with another Intelligence Research Specialist named Eric Hoar, who is a white male in his early thirties.  (*Id.* at ¶ 15).  Hoar was paralyzed in an automobile accident in March of 2010.  (*Id.*).  Previously, Hoar was a Capitol Police Officer; he become an Intelligence Research Specialist in July 2012.  (*Id.* at ¶¶ 15, 19).  Hoar has been allowed to telework from home since becoming paralyzed in March 2010, although he does not have a telework agreement in place.  (*Id.* at ¶¶ 17, 24).  According to Plaintiff, as of September 25, 2012, Hoar has not been required to take any annual leave, sick leave, or compensatory time.  (*Id.* at ¶ 24).

In August or September of 2012, Plaintiff submitted a written request for permission to telework to her supervisor, Norman Grahe.  (*Id.* at ¶ 11).  He neither approved nor denied the request.  (*Id.*).  Donald Rouiller, Deputy Chief of the PSB, formally denied Redmon's request on September 20, 2012 (the "September 2012 Denial").  (*Id.*).  On September 25, 2012, Plaintiff formally complained to Congress' Office of Compliance ("OOC") regarding the September 2012

---

[2] While Redmon alleges in the Complaint that her requests have consistently been denied, she later admitted in a declaration and at oral argument that she now has a teleworking arrangement.  (Decl. of Redmon ¶ 19).

Denial, as required by the Congressional Accountability Act ("CAA").[3]  (*Id.* at ¶ 12).

[REDACTED]

On December 20, 2012, after filing her formal complaint regarding the September 2012 Denial with the OOC, Plaintiff made another request to telework.  This request was supported by a doctor's letter dated December 5, 2012, and signed by Jess D. Edison, M.D.  (*Id.* at ¶ 13).  On January 3, 2013, Rouiller denied this request (the "January 2013 Denial").  (*Id.* at ¶ 14).  On February 7, 2013, Plaintiff filed for counseling regarding the January 2013 Denial.  (*Id.* at ¶ 27).  On March 18, 2013, Plaintiff filed a request for mediation regarding the January 2013 Denial.  (*Id.* at ¶ 28).  On May 31, 2013, the Office of Compliance issued an End of Mediation Notice for the January 2013 Denial.  (*Id.* at ¶ 29).  Plaintiff received the notice on June 5, 2013, and filed her Complaint in the present case on August 30, 2013.  (*Id.* at ¶ 29).  In her Complaint, Redmon alleges race and sex discrimination under Title VII (42 U.S.C. § 2000e-2); age discrimination under the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 633a)[4]; and disability discrimination under the Rehabilitation Act of 1973 (29 U.S.C. § 791) and the Americans with Disabilities Act ("ADA") (42 U.S.C. § 12112),[5] each of the foregoing statutes having been applied to Congressional employees through the CAA.  2 U.S.C. § 1311.

---

[3] *See* 2 U.S.C. §§ 1401-1408 (explaining the three mandatory steps for the employee grievance process: (1) counseling; (2) mediation; and (3) complaint with OOC; or, filing of civil action in a United States district court).

[4] Redmon does not reference the ADEA in her Complaint. (Compl. ¶ 1).  Count VI in the Complaint is titled "Discrimination Based on Combination of Race and Sex," the same title as Count V.  However, the allegations set forth in Count VI relate only to age discrimination. (Compl. ¶ 36).  Redmon's counsel confirmed at oral argument that she is bringing an age discrimination claim under the ADEA.

[5] Redmon does not specify whether her disability claims are brought under the Rehabilitation Act or the ADA.

## II.     LEGAL STANDARD

   a.  Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a party to move for dismissal on the grounds that the plaintiff has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). Although a plaintiff may survive a Rule 12(b)(6) motion even where "recovery is very remote and unlikely[,]" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555–56 (2007) (internal quotation marks and citation omitted). Moreover, a pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action[.]" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). If the facts as alleged, which must be taken as true, fail to establish that a plaintiff has stated a claim upon which relief can be granted, the Rule 12(b)(6) motion must be granted. *See, e.g., Am. Chemistry Council, Inc. v. U.S. Dep't of Health & Human Servs.*, 922 F. Supp. 2d 56, 61 (D.D.C. 2013).

"In ruling on a motion to dismiss, the Court may consider not only the facts alleged in the complaint, but also documents attached to or incorporated by reference in the complaint and documents attached to a motion to dismiss for which no party contests authenticity." *Demissie v. Starbucks Corporate Office & Headquarters*, 19 F. Supp. 3d 321, 324 (D.D.C. 2014). Therefore, "'where a document is referred to in the complaint and is central to the plaintiff's claim, such a

document attached to the motion papers may be considered without converting the motion to one for summary judgment' . . . 'Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied' . . . . Moreover, a document need not be mentioned by name to be considered 'referred to' or 'incorporated by reference' into the complaint." *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 217-18 (D.D.C. 2012) (citations omitted); *see also Long v. Safeway, Inc.*, 842 F. Supp. 2d 141, 144-45 (D.D.C. 2012), *aff'd,* 483 F. App'x 576 (D.C. Cir. 2012).

### III. ANALYSIS

Redmon originally brought claims arising out of two discrete events—the September 2012 Denial and the January 2013 Denial. At oral argument, Redmon withdrew any claims arising out of the September 2012 Denial, including a claim involving the opportunity to attend a collegiate training program. Therefore, the Court will consider only those claims related to the January 2013 Denial: Count I for reasonable accommodation, Count II for disability discrimination, and Counts III-VI for race, sex, and age discrimination.

    a. <u>January 2013 Denial</u>

Defendant Capitol Police argues that all six counts based on the January 2013 Denial should be dismissed under Rule 12(b)(6) for a variety of reasons. [REDACTED] Second, Capitol Police argues that even if the issue is not precluded, a denial of telework is not an adverse employment action, and therefore Redmon has failed to state a claim of discrimination. Third, Defendant argues that Redmon's reasonable accommodation claim (Count I) should be dismissed because she has not pleaded facts sufficient to show that she is disabled under the ADA or that she could perform her job even with a reasonable accommodation. The Court will consider each of these arguments in turn.

i. Issue Preclusion

Under the doctrine of issue preclusion (sometimes referred to as collateral estoppel), "'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Yamaha Corp. of Am. v. United States,* 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen v. McCurry,* 449 U.S. 90, 94 (1980)). "A prior holding has preclusive effect when (1) the same issue being raised was contested by the parties and submitted for judicial determination in the prior case; (2) the issue was actually and necessarily determined by a court of competent jurisdiction in that prior case; and (3) preclusion in the second case would not work a basic unfairness to the party bound by the first determination." *United States v. Daniel Chapter One*, 896 F. Supp. 2d 1, 15 n.11 (D.D.C. 2012).

Capitol Police first argues that as to Redmon's race, sex, age, and disability discrimination claims (Counts II-VI), the issue of whether the denial of a telework request and subsequent use of leave constitutes an adverse employment action is identical for both the September 2012 and January 2013 denials. [REDACTED]

Redmon argues that the issue in this case is not identical to the OOC proceeding because the request for telework that was denied in January 2013 was supported by a doctor's letter, unlike the request that was denied in September 2012.

Because resolution of this issue requires that the Court consider the OOC opinion [REDACTED], which is a matter outside the pleadings, the Court will convert the motion to dismiss to a motion for summary judgment with respect to this issue.[6] Fed. R. Civ. P. 12(d) ("If,

---

[6] The Court is satisfied that Redmon "'reasonably . . . recognized the possibility that the motion might be converted into a motion for summary judgment' and . . . had the opportunity to appropriately respond." *Does I through III v. D.C.*, 238 F. Supp. 2d 212, 216 n.6 (D.D.C. 2002) (citation omitted). The motion is converted to one for summary judgment solely regarding the preclusive effect of the OOC opinion. The opinion speaks for itself, and no further

6

on a motion to dismiss under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. . . ."). Issue preclusion is a form of *res judicata*. *Yamaha Corp. of Am.*, 961 F.2d at 254. Although *res judicata* is normally asserted as an affirmative defense, courts have allowed parties to assert it in a Rule 12(b)(6) motion to dismiss. *Stanton v. D.C. Ct. of Appeals,* 127 F.3d 72, 76–77 (D.C. Cir. 1997) (citing cases). However, this is only proper "when the defense appears on the face of the complaint and any materials of which the court may take judicial notice." *Koker v. Aurora Loan Serv.,* 915 F. Supp. 2d 51, 58 (D.D.C. 2013) (citations omitted). Here, Capitol Police's *res judicata* argument is premised not on public court records—of which the Court may take judicial notice[7]—but an opinion from an OOC hearing officer. Under the CAA, this opinion is confidential and therefore not a public record, 2 U.S.C. § 1416, meaning the motion must be converted. The Court will therefore determine whether Defendant has shown "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986); *Holcomb v. Powell,* 433 F.3d 889, 895 (D.C. Cir. 2006).

The first question the Court must decide is whether the issue being raised here is the same as the one contested by the parties and determined by the OOC in the administrative proceeding. Redmon brings four types of discrimination claims in this case: race and sex discrimination under Title VII, age discrimination under the ADEA, and disability discrimination under the

---

factual evidence is required for the Court to assess its preclusive effect. Moreover, Capitol Police attached the opinion (which Redmon no doubt already possessed) to its motion to dismiss, and Redmon specifically responded to Capitol Police's arguments with respect to the opinion. She also relied on evidence outside the pleadings in her opposition brief, suggesting she understood the possibility that the motion could be converted.

[7] Normally the court may rely on public records when assessing a *res judicata* argument because "all relevant facts are shown by the court's own records, of which the court takes notice." *Hemphill v. Kimberly-Clark Corp.,* 530 F. Supp. 2d 108, 111 (D.D.C. 2008) (citations omitted).

ADA/Rehabilitation Act. [REDACTED] However, central to all her discrimination claims is her assertion that she suffered an adverse employment action. *Hollabaugh v. Office of the Architect of the Capitol*, 847 F. Supp. 2d 57, 65 (D.D.C. 2012) ("Like a Title VII claim, the two essential elements of an ADA claim are that the plaintiff suffered an adverse employment action, and that the adverse employment action was based on plaintiff's disability."); *Wilson v. LaHood*, 815 F. Supp. 2d 333, 338 (D.D.C. 2011), *aff'd sub nom. Wilson v. U.S. Dep't of Transp.*, 11-5323, 2013 WL 1164130 (D.C. Cir. Mar. 4, 2013) ("To state a claim for age discrimination . . . a plaintiff must allege that he belonged to the protected age group of 40 years and older and that he suffered an adverse employment action because of his age."). Redmon does not dispute that on the facts of this case, a determination with respect to whether she suffered an adverse employment action for purposes of her race, sex, and age discrimination claims would be equally applicable to her disability claim. Therefore, the preclusive effect of the OOC's opinion with respect to whether Redmon suffered an adverse employment action will be analyzed for all her discrimination claims.

Capitol Police argues that Redmon requested and was denied the opportunity to telework in the September 2012 Denial and the January 2013 Denial, and therefore a determination with respect to adverse employment action in the former is equally applicable to the latter. [REDACTED]

### ii. Whether Denial of Telework is an Adverse Employment Action

Capitol Police argues in the alternative that even if the issue regarding adverse employment action is not precluded, Redmon has nonetheless not pleaded facts sufficient to state a claim because a denial of a telework request is not an adverse employment action as a matter of

law. Redmon responds by alleging that the denial of her request alone is not the adverse employment action, but rather the denial combined with her using 200 hours of leave.

As discussed above, to state a *prima facie* case of race, age, sex, or disability discrimination, a plaintiff must prove that she suffered an adverse employment action. However, plaintiffs need not establish a *prima facie* case of discrimination to survive a motion to dismiss. "Courts can, however, explore a plaintiff's *prima facie* case at the dismissal stage to determine 'whether the plaintiff can ever meet [her] initial burden to establish a *prima facie* case.'" *Hutchinson v. Holder*, 668 F. Supp. 2d 201, 211-12 (D.D.C. 2009) (citation omitted); *see also Ervin v. Howard Univ.*, 562 F.Supp.2d 58, 70 (D.D.C. 2008) ("A plaintiff is not required to plead a *prima facie* case . . . in the complaint; however, the alleged facts must support such a claim.").

Redmon does not make the required showing for her discrimination claims to survive because she has not pled enough facts to make it plausible that she suffered an adverse employment action. In her Complaint, Redmon alleges that she was required to take leave only as a result of the September 2012 Denial. (Compl. ¶¶ 23, 25). As noted earlier, she previously litigated the September 2012 Denial and the loss of leave before the OOC, and has withdrawn all claims associated with that denial. The only remaining basis for her discrimination claims is the January 2013 Denial. Redmon does not allege that she was required to take leave as a result of that denial, meaning she cannot claim that loss of leave (either on its own or in combination with the telework denial) constitutes the required adverse employment action. This leaves the denial of her telework request standing alone as the only possible basis for an adverse employment action. Redmon did not argue that the denial itself could be an adverse employment action, thus conceding the point, but the Court will nonetheless analyze Capitol Police's argument.

An adverse employment action is "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."[8] *Taylor v. Small,* 350 F.3d 1286, 1293 (D.C. Cir. 2003) (citation omitted).  If an action is not presumptively adverse, such as hiring and firing,[9] "[a]n employee must experience materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm." *Douglas v. Donovan,* 559 F.3d 549, 552 (D.C. Cir. 2009) (internal quotation marks and citations omitted).  "Not everything that makes an employee unhappy is an actionable adverse action." *Broderick v. Donaldson,* 437 F.3d 1226, 1233 (D.C. Cir. 2006) (quoting *Holcomb,* 433 F.3d at 902).  "'[P]urely subjective injuries,' such as dissatisfaction with a reassignment, public humiliation, or loss of reputation, are not adverse actions[.]" *Holcomb,* 433 F.3d at 902 (quoting *Forkkio v. Powell,* 306 F.3d 1127, 1130–31 (D.C. Cir. 2002)).

Courts in this and other jurisdictions have repeatedly held that denial of a telework arrangement on its own does not constitute an adverse employment action. *Byrd v. Vilsack*, 931 F. Supp. 2d 27, 41 (D.D.C. 2013) ("[T]he denial of an employee's request to work from home on a few occasions, without more, does not constitute an adverse employment action under Title VII"); *Beckham v. Nat'l R.R. Passenger Corp.,* 736 F. Supp. 2d 130, 149 (D.D.C. 2010) ("Being denied the ability to work from home on, at most, three occasions is a minor annoyance, not an adverse action."); *Ng v. Lahood*, 952 F. Supp. 2d 85, 96 (D.D.C. 2013); *Bright v. Copps,* 828 F.

---

[8] Courts consistently rely on case law interpreting the statutes incorporated by the CAA (*e.g.*, Title VII or the ADA) when addressing the substance of employment discriminations claims brought under the CAA. *See, e.g.*, *Gordon v. Office of the Architect of the Capitol*, 928 F. Supp. 2d 196, 204 n.5 (D.D.C. 2013); *Newton v. Office of the Architect of the Capitol*, 905 F. Supp. 2d 88, 92 (D.D.C. 2012) (collecting cases).

[9] *See Douglas v. Donovan*, 559 F.3d 549, 552-53 (D.C. Cir. 2009).

Supp. 2d 130, 148–49 (D.D.C. 2011); *Brockman v. Snow*, 217 F. App'x 201, 206 (4th Cir. 2007) ("Although Brockman was not allowed to work from home, she was not denied leave.  It is undisputed that Mollett offered to approve sick leave, but Brockman did not want to take time off.  A determination affecting Brockman's ability to work where she chooses is not the type of ultimate decision that this court has required for a prima facie case of discrimination."); *Homburg v. UPS,* No. 05–2144, 2006 WL 2092457, at *9 (D. Kan. July 27, 2006) ("[D]istrict courts ... have consistently held that the denial of a request to work from home is not adverse employment action.") (collecting cases); *Seldon v. Nat'l R.R. Passenger Corp.*, No. 05-4165, 2007 WL 3119976, at *3 (E.D. Pa. Oct. 24, 2007) (collecting cases); *Melton v. Farmers Ins. Grp.*, 619 F. Supp. 2d 1131, 1139 (W.D. Okla. 2008); *but see Weng v. Solis*, 960 F. Supp. 2d 239, 249 (D.D.C. 2013).  The Court agrees with the cited opinions that a denial of a request to telework, without more, does not rise to the level of an adverse employment action, as it does not involve "hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits."  Perhaps recognizing this, Redmon attempts to conflate the January 2013 denial of her telework request with her loss of leave from September 2012 into a single employment action.  However, at oral argument Redmon's counsel specifically stipulated that this case only involves actions taken after January 2013, meaning Redmon's leave taken as of September 2012 is irrelevant with respect to the alleged adverse employment action.

     Redmon's effort to save her discrimination claims by tying them to the purported loss of future benefits fares no better.  Redmon argues -- for the first time -- in her opposition to Defendant's motion to dismiss, that the alleged adverse employment action is the denial of telework combined with the loss of *future* leave time.  Redmon offers no support for her

11

argument other than to claim the telework denial "is a deprivation of her leave benefits for potentially the rest of her career" and causes "future loss of uncountable hours." (Pl. Opp'n 11-12). This speculative harm is not enough to make out an adverse employment action. *Hayes v. Chao*, 541 F. Supp. 2d 387, 394 (D.D.C. 2008); *Porter v. Jackson*, 668 F. Supp. 2d 222, 233 n.11 (D.D.C. 2009), *aff'd,* 410 F. App'x 348 (D.C. Cir. 2010). Moreover, these bald assertions are contradicted by the record. As discussed above, Redmon has not alleged that she has taken any leave as a result of the January 2013 Denial. The last time Redmon allegedly used her leave as a result of a telework denial was September 25, 2012, which means it has been over two years since she has lost benefits as a result of the alleged adverse employment action. This does not suggest that she is at imminent risk of losing future benefits as a result of the January 2013 Denial. In addition, Redmon admitted at oral argument that she received a reasonable accommodation in the summer of 2014 and is now able to telework, further suggesting that she is not at risk of losing benefits going forward.

Even assuming all the facts as alleged by Redmon as true, she has failed to state a claim of discrimination because she has not suffered an adverse employment action. Therefore, Counts II-VI must be dismissed.

### iii.   Reasonable Accommodation (Count I)

Redmon claims that Capitol Police failed to provide a reasonable accommodation for her disability when it denied her request for a teleworking arrangement. (Compl. ¶ 27; Pl. Opp'n 10). Capitol Police moves to dismiss this claim because Redmon has not pleaded facts sufficient to show she is disabled under the ADA or that she could perform her job with a reasonable accommodation.

"To state a claim for failure to accommodate, a plaintiff must allege facts sufficient to show that (1) he had a disability within the meaning of the ADA; (2) his employer had notice of his disability; (3) he could perform the essential functions of the position with reasonable accommodation; and (4) his employer refused to make such accommodation." *Floyd v. Lee*, 968 F. Supp. 2d 308, 326 (D.D.C. 2013) (citations omitted). The ADA defines "disability" to mean "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1)(A).[10] To be disabled under the ADA, an individual must plead facts sufficient to show: (1) that she has a physical or mental impairment (2) that substantially limits (3) a major life activity. *Haynes v. Williams,* 392 F.3d 478, 481–82 (D.C. Cir. 2004). While Congress amended the ADA in 2008 to broaden coverage and relax the standards under which an individual is deemed disabled, 42 U.S.C. § 12102(4), plaintiffs must still plead factual matter sufficient to show they have a disability to survive a motion to dismiss. *Dave v. Lanier*, 681 F. Supp. 2d 68, 74 (D.D.C. 2010).

Redmon meets the first and third requirements, as she suffers from a physical impairment (sarcoidosis) which she alleges affects her ability to walk and stand, both of which are major life activities.[11]  (Compl. ¶ 8).

Redmon fails, however, to plead facts sufficient to show the second requirement—that the major life activities of walking and standing are substantially limited. As discussed above,

---

[10] The ADA also defines disability as a record of an impairment or being regarded as having an impairment. 42 U.S.C. § 12102(1)(B)-(C). Redmon does not allege either as the basis for her reasonable accommodation claim.

[11] Defendant argues that Redmon did not specifically identify a major life activity that is affected by her sarcoidosis. Viewing the Complaint in the light most favorable to the non-movant, the Court concludes that Redmon has provided a "short and plain statement" sufficient to put Capitol Police on notice of the major life activities affected by her disability. Redmon alleges that her sarcoidosis "causes her severe lower leg pain and swelling of her feet." (Compl. ¶ 8). Redmon explains in her opposition brief that this leg pain makes it difficult for her to both stand and walk. (Pl. Opp'n 12). Walking and standing are indisputably major life activities. 42 U.S.C. § 12102(2)(A). While Redmon certainly could have been more specific with respect to the affected major life activities, the Court finds that she has pleaded enough to make out the third requirement.

Congress specifically sought to relax the standards with respect to the "substantially limited" test with the ADA Amendments Act of 2008.  Courts in this district have further held that "specific allegations about the limitation of a major life activity caused by the plaintiff's impairment are not required to survive a motion to dismiss." *Boykin v. Gray*, 895 F. Supp. 2d 199, 216 (D.D.C. 2012).  However, a plaintiff must still plead enough to make a claim plausible. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555-56.  Redmon has not done so here.

Were the Court to rely solely on Redmon's allegations in her Complaint and opposition brief, it would be a close case.  Courts have previously noted the difficulty of drawing a bright-line rule in determining when walking or standing are substantially limited, and decisions often turn on careful factual analysis. *Gordon v. D.C.*, 480 F. Supp. 2d 112, 116-17 (D.D.C. 2007); *Etheridge v. FedChoice Fed. Credit Union*, 789 F. Supp. 2d 27, 38-39 (D.D.C. 2011); *Almutairi v. Int'l Broad. Bureau*, 928 F. Supp. 2d 219, 235 (D.D.C. 2013).  Redmon asserts in her opposition that during a sarcoidosis flare up, the pain in her legs makes it difficult for her to commute because of the "walk from Union Station to the office building (a total of about one mile), and involves prolonged periods of standing while waiting for the bus and metro." (Pl. Opp'n 12).

The Court need not decide whether these allegations standing alone are sufficient to survive a motion to dismiss because evidence provided by Redmon establishes that she has not pled a substantial limitation.  Redmon attached to her opposition the doctor's letter she received in December 2012 and upon which she relied in making her second request to telework.  The Court may consider this doctor's letter without converting the motion to one for summary judgment, as Redmon clearly relied on it in the Complaint and its authenticity is not disputed. *Strumsky v. Washington Post Co.*, 842 F. Supp. 2d 215, 217-18 (D.D.C. 2012).  In the note, Dr.

Jess Edison explains Redmon's symptoms and the benefits she may receive if allowed to telework. (Pl. Opp'n Ex. 2). Dr. Edison goes on to state that **"[t]here are no current limitations to Ms [sic] Redmon's daily activities**." (*Id.*) (emphasis added). "[W]here a conclusory allegation in the complaint is contradicted by a document attached to the complaint, the document controls and the allegation is not accepted as true." *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 21, 26 n.4 (D.D.C. 2014) (citations omitted); *Kaempe v. Myers,* 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice."). The Court cannot accept Redmon's allegations with respect to her substantial limitations as true when they are flatly contradicted by a document incorporated into the Complaint—the very document on which Redmon relies to establish her disability. In Dr. Edison's medical judgment, Redmon was not, at the time of the January 2013 Denial, substantially limited in any major life activities.[12] As such, Redmon fails to state a claim for reasonable accommodation because she has not pled enough facts to show she is disabled under the ADA.[13]

---

[12] Redmon's counsel attempted to argue around the doctor's letter at oral argument by claiming that Dr. Edison meant that Redmon did not have a substantial limitation *at the very moment* she was in the doctor's office, but Dr. Edison would otherwise agree that she does have a substantial limitation when a flare up occurs. This is mere speculation and not supported by the actual opinion provided by Dr. Edison. The facts before the Court show that Redmon provided Capitol Police with a doctor's letter which stated that she was not disabled, and Capitol Police legitimately relied on that letter to deny Redmon's reasonable accommodation request. While Redmon may have additional evidence to prove her disability, she has not pled it here.

[13] This case is similar to the facts at issue in *Ziegler v. Potter*, 510 F. Supp. 2d 9 (D.D.C. 2007). In that case, the evidence before the Court included a letter from plaintiff's psychologist describing plaintiff's condition and limitations but indicating that plaintiff's impairment had "no significant impact on his major life activities." *Id.* at 17. The court concluded on the basis of this letter that plaintiff did not meet the definition of disability and was therefore not entitled to a reasonable accommodation, and dismissed the claim. *Id.* Plaintiff moved to reconsider, and, in denying the motion, the court clarified that the psychologist "communicated her professional opinion, as a matter of medical fact, that Mr. Zeigler's impairment did not substantially limit his ability to engage in major life activities. In relying on her opinion, the Court merely accepted the facts she recounted and, from them, reached a legal judgment." *Zeigler v. Potter*, 555 F. Supp. 2d 126, 129-30 (D.D.C. 2008), *aff'd*, 09-5349, 2010 WL 1632965 (D.C. Cir. Apr. 1, 2010). Much like the court in *Ziegler*, the Court here has been presented with a doctor's letter—specifically relied on by Redmon as evidence of her disability and the reason she should have been given a reasonable accommodation, and with less detail than the letter in *Ziegler*—which plainly states that Redmon is not substantially limited in any major life activities.

## IV.     CONCLUSION

For the foregoing reasons, the Motion to Dismiss is GRANTED. All claims based on the September 2012 Denial (which Redmon withdrew at oral argument) are dismissed with prejudice, and all claims based on the January 2013 Denial are dismissed without prejudice. The Court need not address the other bases for dismissal presented by Capitol Police in its motion. An appropriate Order accompanies this Memorandum Opinion.


Date:  February 18, 2015


*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge